**FILED**

JUN 7 2022

**U.S. CLERK'S OFFICE**
**INDIANAPOLIS, INDIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No. 1:19-CR-152-TWP-MJD |
| ROBERT MASON ELLIOTT, | ) |
| | ) |
| Defendant. | ) |

## PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and Tiffany J. Preston, Assistant United States Attorney ("the Government"), and the defendant, ROBERT MASON ELLIOTT ("the defendant" or "Elliott"), in person and by counsel, Brandon Sample, hereby informs the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The following are its terms and conditions:

### Part 1: Guilty Plea and Charges

1. **Plea of Guilty:** The defendant petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offenses charged in the Second Superseding Indictment filed at Docket 189:

a. Counts One and Two, which charge that the defendant committed the offense of Murder for Hire, in violation of Title 18, United States Code, Section 1958(a).

**b.** Counts Three and Four, which charge that the defendant committed the offense of Tampering with a Witness, Victim, or Informant, in violation of Title 18, United States Code, Section 1512 (a)(1) and (2).

**c.** Count Fifteen, which charges that the defendant committed the offense of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g).

**2. Dismissal of Counts**: Following imposition of sentence, the government will move to dismiss Counts 5 through 14 of the Second Superseding Indictment as filed at Docket 189, without prejudice. If the defendant complies with all the terms of this Plea Agreement, then the Government will not seek to refile these charges.

**3. Potential Maximum Penalties**: The defendant understands that the offenses to which he is pleading guilty carry the following potential maximum and mandatory minimum penalties:

**a. Counts One and Two**: Murder for Hire, in violation of Title 18, United States Code, Section 1958(a), is punishable by is punishable by a maximum sentence of 10 years' imprisonment, a $250,000 fine, and a term of supervised release not to exceed three years following the term of imprisonment.

**b. Counts Three and Four**: Tampering with a Witness, Victim, or Informant, in violation of Title 18, United States Code, Section 1512 (a)(1) and (2), is punishable by a maximum sentence of 30 years' imprisonment, a $250,000 fine, and

a term of supervised release not to exceed three years following the term of imprisonment.

    **c.**    **Count Fifteen**, which charges that the defendant committed the offense of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g), is punishable by a maximum sentence of 10 years' imprisonment, a $250,000 fine, and a term of supervised release not to exceed three years following the term of imprisonment.

    **4.**    **Elements of the Offense:**  To sustain the offenses to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

**Counts One and Two**
**Murder for Hire**
**Title 18, United States Code, Section 1958(a)**

    **a.**    The defendant used, or caused to be used, the mail or any facility of interstate commerce;

    **b.**    While using the mail or facility, the defendant had the intent that a murder be committed in violation of the laws of any state; and

    **c.**    The murder was to be committed as consideration for a promise or agreement to pay anything of pecuniary value.

## Counts Three and Four
## Tampering with a Witness, Victim, or Informant
### Title 18, United States Code, Section 1512 (a)(1) and (2)

**a.** Minor Victim 1 and Witness Victim 1 were witnesses in the matter of *United States v. Robert Mason Elliott* pending in the United States District Court for the Southern District of Indiana;

**b.** The Defendant attempted to kill Minor Victim 1 and Witness Victim 1; and

**c.** The Defendant acted knowingly with the intent to prevent Minor Victim 1 and Witness Victim 1 from attending or testifying at the aforementioned matter in Court.

## Count Fifteen
## Felon in Possession of a Firearm
### Title 18, United States Code, Section 922(g)

**a.** The defendant knowingly possessed the firearms described in the Second Superseding Indictment filed at Docket 189;

**b.** At the time of the possession, the defendant was a prohibited person as described in the Second Superseding Indictment filed at Docket 189;

**c.** At the time of the possession, the defendant knew that he was a prohibited person; and

**d.** The firearms described in the Second Superseding Indictment filed at Docket 189 had been shipped or transported in interstate or foreign commerce before the defendant received it, or the defendant's possession of the firearms was in or affected commerce.

## Part 2:  General Provisions

5.     **18 U.S.C. § 3553(a) and Sentencing Guidelines:**  The defendant agrees and understands that should this Court accept this plea agreement, the Court will sentence the defendant to a sentence within the range set forth in paragraph 10 below.  The defendant agrees and understands that the Court, in deciding whether to accept or reject the specific sentence set forth in paragraph 10, below, will (A) consider the factors set forth in 18 U.S.C. § 3553(a), and (B) consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.").  The defendant also agrees and understands that the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature, and that the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court.

6.     **11(c)(1)(C), Fed. R. Crim. P.:**  The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(C) and that the specific sentencing range set forth in paragraph 10 below, is the appropriate disposition of this cause.  The parties understand that the Court must accept or reject the sentencing range as specified in this Plea Agreement.  If the Court rejects this Plea Agreement, then either party may withdraw from this Plea Agreement.  The defendant acknowledges that pursuant to Fed. R. Crim. P. 11(c)(3), (4) and (5), if the Court rejects the Plea Agreement, the Court will advise the defendant personally in open court that the Court is rejecting the Plea Agreement and the Court will afford both parties the opportunity to withdraw the Plea Agreement.

**7.      Plea Agreement Based on Information Presently Known:**  The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government.  The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant bringing other federal charges against the defendant.

**8.      No Protection From Prosecution for Unknown or Subsequent Offenses:**  The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time.   The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

**9.      Rights Under Rule 11(b), Fed. R. Crim. P.:**  The defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy. The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the

right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court. The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

### Part 3: Sentence of Imprisonment

**10.    Agreed Upon Sentence Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C):** If the defendant fully complies with the terms of this Plea Agreement, then the government and the defendant agree as follows:

**a.    Imprisonment:** The parties agree that that the defendant should be sentenced to a term of imprisonment of between 10 and 55 years. The defendant understands that the United States will recommend a sentence of not more than 55 years' imprisonment. The defendant is free to recommend any sentence, but understands that that he cannot be sentenced to a term of less than 10 years' imprisonment. The defendant understands that the District Court may sentence him to consecutive terms of imprisonment pursuant to Title 18, United States Code,

---

[1]Title 18, U.S.C. " 3141-3156, Release and Detention Pending Judicial Proceedings.

Section 3584 and United States Sentencing Guideline provisions including, but not limited to, Sections 5G1.2 and 5G3.1(d).

**b.** **Fine**: The parties agree that no fine shall be imposed.

**c.** **Waiver of Interest**: The parties agree that interest shall be waived on the restitution order imposed by the Court at sentencing.

**d.** **Restitution**: The defendant agrees to pay Minor Victim 1 and Witness Victim 1 $5,000 each in restitution pursuant to Title 18, United States Code, Section 3663(a)(3).

**e.** **Payment Terms:** The parties understand that the Court will determine the payment terms for any restitution. The defendant agrees that while the District Court sets the payment schedule, this schedule may be exceeded if and when the defendant's financial circumstances change. In that event, and consistent with its statutory obligations, the Government may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.

**f.** **Joint Agreement of the Parties**: The parties agree that throughout the defendant's entire sentence and term of supervised release, he will have no direct or indirect contact with Minor Victim 1 and Witness Victim 1 or their families including through intermediaries.

**g.** **Extent of Rule 11(c)(1)(C) Agreement:** The provisions set forth in paragraph 10, above, are the only provisions of this Plea Agreement subject to the provisions of Federal Rule of Criminal Procedure 11(c)(1)(C).

11.    **Supervised Release:**   Both parties reserve the right to present evidence and arguments concerning the length, terms, and conditions of the period of supervised release. The Government agrees that it will not advocate for the following special conditions of Supervised Release at sentencing:

   a.    The Government will not advocate for the following condition: You shall not have unsupervised meetings, activities, or visits, or intentional communications with any minor unless they have been disclosed to the probation officer and approved by the court. You shall not have supervised meetings, activities, visits, or intentional communications with any minor unless they have been approved by the probation officer. Before you may request approval for such meetings, activities, visits, or intentional communications (unsupervised or supervised), you must notify the person(s) having custody of any such minor(s) about the conviction in this case and the fact that you are under supervision.

   b.    The Government will not advocate for the following condition: You shall not be employed in any position or participate as a volunteer in any activity that involves unsupervised meetings, intentional communications, activities, or visits with minors except as disclosed to the probation officer and approved by the court.

**c.** The Government will not advocate for the following condition: You shall participate in a program of treatment for sexual disorders, including periodic polygraph examinations, as directed by the probation officer. The treatment provider should determine the type and timing of such polygraph examinations. The court authorizes the release of the presentence report and available psychological evaluations to the treatment provider, as approved by the probation officer.

**d.** The Government will not advocate for the following condition: You shall pay the costs associated with the following imposed conditions of supervised release, to the extent you are financially able to pay: sex offense-assessment, treatment, and physiological testing and computer monitoring systems. The probation officer shall determine your ability to pay and any schedule of payment

**12.** **No Appeal of Supervised Release Term and Conditions**: As discussed in greater detail below, the parties' reservation of the rights to present evidence and arguments to the Court concerning the conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified below, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

**13.** **Placement:** The defendant requests that this Court recommend to the Federal Bureau of Prisons that the defendant serve any sentence of imprisonment

imposed in this case at an institution named by the defendant during the sentencing hearing. The defendant acknowledges and understands that any recommendation by the Court is only a recommendation and does not bind the Federal Bureau of Prisons. The Government does not object to the defendant's requested recommendation.

## Part 4: Monetary Provisions and Forfeiture

14. **Mandatory Special Assessment:** The defendant will pay a total of $500 assessment on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

15. **Obligation to Pay Financial Component of Sentence**: If the defendant is unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release. The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures, to the Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court. The defendant also authorizes the Government to inspect and copy all financial

documents and information held by the United States Probation Office. If the defendant is ever incarcerated in connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

**16.** **Forfeiture:** The defendant admits that the property listed below constitutes contraband, was used to facilitate, or constitutes the fruits of the commission of the offense(s) to which the defendant is pleading guilty, and, therefore, is subject to forfeiture to the United States. The defendant abandons all right, title, and interest the defendant may have in the property listed below so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity, without further notice or obligation whatsoever owing to the defendant. The defendant further agrees not to contest any forfeiture action brought against and consents to the forfeiture of any of the property listed below, whether any such forfeiture action is administrative, judicial, civil, or criminal, and agrees not to contest any use or destruction of any of the property listed below by any federal, state, or local law enforcement agency:

Such property includes, but is not limited to the data contained within defendant's data storage and social media accounts that were used to facilitate the offense or to produce, distribute, and store child sex abuse material. Additionally, such property includes:

A. a Springfield Model, XDs-9, 9 millimeter pistol with a 4-inch barrel;
B. a Glock 23 .40 caliber pistol;
C. a 2008 Hayabusa Motorcycle; and,
D. All firearms and ammunition seized on or about June 12, 2019.

The defendant consents to the entry of orders of forfeiture for such property and waives the requirements of Rules 32.2 and 43(a), Fed. R. Crim. P., regarding notice of the forfeiture in the charging document, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

## Part 5: Factual Basis for Guilty Plea

**17.** The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offenses set forth in Paragraph One, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial. The following information is only a summary of the Government's evidence. This Plea Agreement is not intended to foreclose the presentation of and the Government reserves the right to present additional evidence at the time of sentencing.

Robert Mason Elliott ("Elliott") was a resident of Shelbyville, Indiana, who was born in 1993. Elliott was formerly housed in Shelby County, Henderson, and Marion County Jails as a result of his pending state and federal criminal charges,

including the matter of *United States v. Robert Mason Elliott*, 1:19-CR-00152-TWP-MJD. Elliott's relatives, hereafter Relative 1 and Relative 2 are also residents of Shelbyville, Indiana. Before his incarceration in 2017, Elliott resided with his Relative 1 and Relative 2 in Shelbyville. Shelbyville is in the Southern District of Indiana.

The pseudonym "Minor Victim 1" represents a 16-year-old minor girl, who lived in the Southern District of Indiana, and who was born in 2000. The pseudonym "Witness Victim 1" represents Minor Victim 1's relative , who lived in the Southern District of Indiana.

Elliott acknowledges that the mail and cellular telephones are facilities of interstate commerce. Elliott further acknowledges that the Shelby County Jail is located at 107 W. Taylor Street, Shelbyville, Indiana, and that Marion County Jail is located at 40 S. Alabama Street, Indianapolis, Indiana. Elliott further acknowledges that Henderson County Detention Center is located at 380 Borax Drive, Henderson, Kentucky, and houses federal inmates with pending charges in the Southern District of Indiana and elsewhere.

On or about August 8, 2017, Elliott was charged with battery of Minor Victim 1 in the Superior Court of Shelby County, Indiana, in Cause Number 73D02-1708-CM-000972. On or about August 10, 2017, the Shelby County Superior Court entered a No Contact Order barring Elliott from having contact with Minor Victim 1 in person, by telephone or letter, through an intermediary, or in any other way. Minor Victim 1 was the material witness to the battery charge.

On or about October 23, 2017, Elliott was charged with Dealing a Narcotic Drug to Minor Victim 1 and Invasion of Privacy (as to Minor Victim 1) under Cause Number 73C01-1710-F4-27 in the Shelby County Superior Court, Shelby County, Indiana. Minor Victim 1 and Witness Victim 1 were material witnesses in Cause Number 73C01-1710-F4-27. On or about October 24, 2017, Elliott was again ordered to have no contact with Minor Victim 1 arising out of his charges under 73C01-1710-F4-000027. Elliott admits that the order was pending between May 2019 and June 14, 2019.

On or about November 6, 2017, Elliott was charged with 38 counts of Invasion of Privacy under Cause Number 73C01-1711-F6-555 in the Shelby County Superior Court, Shelby County, Indiana. Minor Victim 1 was the victim in Cause Number 73C01-1711-F6-555. On or about November 8, 2017, the Shelby County Superior Court entered a No Contact Order barring Elliott from having contact with Minor Victim 1 in person, by telephone or letter, through an intermediary, or in any other way arising out of his charges for 38 counts of Invasion of Privacy under Cause Number 73C01-1711-F6-000555. These matters were pending between May 2019 and June 14, 2019.

On or about March 19, 2018, Elliott was charged in the Shelby County Superior Court with Child Exploitation and Possession of Child Pornography under Cause Number 73C01-1803-F5-000034. Minor Victim 1 was the victim in Cause Number 73C01-1803-F5-000034. On or about March 20, 2018, Elliott was again ordered to

have no contact with Minor Victim 1 by the Shelby County Court arising out of his charges under Cause Number 73CO1-1803-F5-000034.

<u>Federal Charges Relating to Counts 1 through 4</u>

On December 27, 2018, Elliott was charged by Complaint in the Southern District of Indiana, Indianapolis Division, in Cause Number 18-mc-1307 with Sexual Exploitation of a Child under Title 18, United States Code, Sections 2251(a), 2252(a)(2), and 2252A(a)(5)(B). Minor Victim 1 and Witness Victim 1 were material witnesses in Cause Number 18-mc-1307, and Minor Victim 1 was a victim.

On May 7, 2019, Elliott was charged by Indictment in the Southern District of Indiana, Indianapolis Division, in Cause Number 19-CR-152-TWP-MJD with five counts of Sexual Exploitation of a Child, one count of Coercion and Enticement of a Minor, five counts of Distribution of Child Pornography, and one count of Felon in Possession of a Firearm, under Title 18, United States Code, Sections 2251(a), 2422(b), 2252(a)(2), 922(g)(1) and 924(a)(2). Minor Victim 1 and Witness Victim 1 were material witnesses in Cause Number 19-CR-152-TWP-MJD, and Minor Victim 1 was a victim.

On June 20, 2019, Elliott was charged in a Superseding Indictment with Murder for Hire of Minor Victim 1 and Witness Victim 1 (Count 1), Sexual Exploitation of a Child (Counts 2-6), Coercion and Enticement of Minor Victim 1 (Count 7), Distribution of Child Pornography (Counts 8-12), and Felon in Possession of a Firearm and Ammunition (Count 13). Minor Victim 1 and Witness Victim 1 are

witnesses in Elliott's official proceeding in federal court in *United States v. Robert Mason Elliott*, 1:19-CR-00152-TWP-MJD.

Accordingly, Elliott admits that Minor Victim 1 and Witness Victim 1 were witnesses in Elliott's official proceeding in federal court in *United States v. Robert Mason Elliott*, 1:19-CR-00152-TWP-MJD as of May-June 2019.

<u>Elliott Hires a Hitman to Kill Minor Victim 1 and Witness Victim 1</u>

Elliott admits that in or about May 2019, he approached a Cooperating Witness (hereinafter "CW") with whom he was housed in the Marion County Jail and asked if the CW knew others who would be willing to purchase military grade weapons buried in Relative 2's backyard. According to CW, Elliott said that he knew someone in the military who had stolen the weapons, and had given them to Elliott. Elliott then approached the CW a few days later, and asked if the CW knew members of a Mexican cartel (CW is Hispanic), who could kill Minor Victim 1, Witness Victim 1, and Minor Victim 1's sister. Elliott provided the real names of Minor Victim 1 and Witness Victim 1, and told the CW that they resided in Shelbyville, and were witnesses against Elliott. Elliott believed that he would be released on May 21, 2019 (his federal detention hearing), and that he would then be able to contact the Mexican cartel hitman and pay him for killing Minor Victim 1, Witness Victim 1, and Minor Victim 1's sister.

Elliott acknowledges that the CW contacted his attorney, who contacted the United States Attorney's Office and agents of the Drug Enforcement and Administration who had been working with the CW. Elliott further acknowledges

that on or about May 20, 2019, representatives of the United States Attorney's Office, DEA, and the FBI met with the CW and debriefed him/her. Elliott acknowledges that law enforcement officers instructed the CW to provide Elliott with a phone number of an undercover FBI agent (purportedly named Arturo), and to tell Elliott that the number and the individual was contact information for the Mexican cartel hitman.

On or about May 21, 2019, Elliott appeared for his federal detention hearing before a Magistrate Judge, and requested to be released to Relative 2's home. The Magistrate Judge detained Elliott.

Elliott admits that on or about May 23, 2019, and after Elliott was released back to his cell, Elliott used PIN 1906480 belonging to inmate Individual A, to contact Relative 2. During that call, which was recorded, Elliott advised that he knew that federal agents and another law enforcement officer had been listening to his jail calls because an insider at the jail had looked at his account, and either showed him or relayed the information to him contained in those records. Elliott said that he knew that a Special Agent of the FBI and another law enforcement officer had listened to every jail call placed by Elliott. Accordingly, Elliott instructed Relative 2 that Elliott would now use another inmate's PIN to contact his family so that law enforcement could not monitor his calls. Elliott then began using the PIN number 1906480 belonging to inmate Individual A in an attempt to avoid law enforcement surveillance of his telephone conversations.

On or about May 30, 2019, Elliott was transferred from Marion County Jail to Henderson County Detention Center in Henderson, Kentucky. Elliott was

transferred before the CW had an opportunity to give him the undercover agent's telephone number. On or about May 28, 2019, Elliott mailed the following letter to the CW's wife. Elliott acknowledges that the CW's wife contacted the CW's attorney, Attorney A, who contacted law enforcement.



Atubo

How ARE you Doing? I Hope all IS well. I am doing well. I have two People that I need you to Find and take care of. They are wanting to buy my motorcycle. There names are ███████ and ███████. They both live In shelbyville IN. They are mother and daughter. ███ IS mother. They both have Facebook's and ███████ are there names on Facebook. You can see both of there Pictures on there and Find out alot about them on Facebook. ███████ drives a newer modle Blue chevy 4-Door SUV. They both live In the Same house. I dont Know the address but It shouldent be hard to find. Shelbyville IS a very small town. ███████ works at mcdonalds I was told. These two are very bad People. They are witnesses for the State and the Feds on Someone I Know. They are trying to Put him away for life. So when you deliver the motorcycle to them and take Care of them be careful. They are not to be trusted I appreciate your help very much. I have a friend who IS In the military. We have a excellent relationship. Him and I do alot of business together. I have alot of heavy duty eauthment that I was told you would be Interested In. shouldrs L's 203's very hard to find motorcycle eaultment I will compensate you greatly for your help once I get home. I was told that you would be a very loyal and Profitable customer. I will consider your willingness to help with my Problem a act of trust and good faith that one

19

I get home that we will establish a very profiteble
long lasting relationship that we will both Prosper greatly from.
I trust that you understand that if I were home that
I would handle this Problem on my own but being that I
am not this Is why I need your assistance. once this Is
taken care of I expect to be home with in 90 days from
the date that the motorcycle Is sold, once this Problem Is
fixed I will hear of the successful delivery and sale of
the motorcycle. good news spreads fast. so dont worry on
weather I will know It Is done or not. Once It Is done
and I am released I will be contacting you to schedule
a meeting with you to compensate you for your willingness
to help me with this problem as well as to negotiate
business on the heavy equitment that I have to get rid of.
I look forward to hearing of the good news and meeting you.

IGUALNA:.

o la arturo camo estas espero ten coentre bien
e ablade con mi amigo y quiere aser un negosio con tigo
quiere ablar te de la moto el quiere saber como
puede comunicarse con tigo para tratar el
asento este ablande en serio yo creo qoe
lo que te dise es berdad as ma saber con mi
esposa siompo tu sabes cuidate responde me
pronto. arturo el tiene las granadas y Vesеces rifes
tiene muchas cosa que ati teguston armas militares

The envelope included a return address of Marion County Jail from inmate Individual A.

As set forth in the letter, Elliott identified Minor Victim 1 and Witness Victim 1 by first and last name, their Facebook accounts, and location. Elliott told the CW's

20

wife that Minor Victim 1 worked at McDonalds and described Witness Victim 1's vehicle. Elliott said "They are witnesses for the state and the Feds on someone I know. They are trying to put him way for life. So when you deliver the motorcycle to them and take care of them be careful." When Elliott was referring to Minor Victim 1 and Witness Victim 1 being witnesses against them in the "state and the Feds" he was referring to his pending state charges set forth above and his pending federal charges in the Southern District of Indiana, Indianapolis Division, in Cause Number 19-CR-152-TWP-MJD with five counts of Sexual Exploitation of a Child, one count of Coercion and Enticement of a Minor, five counts of Distribution of Child Pornography in which Minor Victim 1 and Witness Victim 1 were material witnesses. Elliott admits that he was referring to killing Minor Victim 1 and Witness Victim 1. Elliott offered, in coded language, to exchange heavy duty equipment, a motorcycle (as described above), and military-grade weapons including shoulder-launched multipurpose assault weapons ("shoulder L's") and M203 Grenade Launchers ("203's") in exchange for killing Minor Victim 1 and Witness Victim 1. Elliott acknowledges that Attorney A asked the CW's wife to place the letter and envelope in a plastic bag, and that agents took possession of the letter and envelope.

Elliott admits that one of his associates told him (prior to writing the letter) that Minor Victim 1 now worked at McDonalds. Elliott told Relative 2 that if a "Mexican" calls to say "thank you."

Elliott admits that the English portion of the letter was written by Elliott, and the Spanish portion was written by the CW. Elliott addressed the letter to "Atudo"

because the CW instructed him to address it to "Arturo." Elliott admits that the CW provided the CW's wife's address to Elliott and told Elliott that his wife would get the letter to Arturo. Elliott gave the CW Relative 2's phone number and instructed him to call his Relative 2 with the hitman's number once CW was ready. Elliott acknowledges that the following day, the CW tendered Relative 2's number given to him/her by Elliott to agents at the CW's court hearing. The number in the CW's possession matches that of Relative 2.

Elliott acknowledges that the Spanish portion of the letter was written by the CW, and when translated by an expert in Spanish to English translation, reads as follows:

> IGUANA.
> Hi Arturo how are you I hope you're well
> I've spoken to my friend and he wants to do a deal with you
> He wants to talk to you about the moto[rcycle]
> He wants to know how he can communicate with you to deal with the matter
> He's talking serious
> I think that what he's telling you is true
> Let me know through my wife yes or no
> You know
> Take care
> Answer me soon.
> Arturo he has the grenades and vasucas [sic – bazookas] rifes [sic – rifles]
> He has a lot of things that you like military weapons

"Iguana" was Elliott's codename for the hitman (which is contained in the letter). Elliott acknowledges that law enforcement officers instructed the CW to use the phone number that Elliott gave to him/her, and call Relative 2 and give him (Relative 2) "Arturo's" phone number. Elliott acknowledges that the number actually belonged to the FBI undercover agent.

Elliott acknowledges that on or about June 6, 2019, the CW contacted Relative 2 at the direction of law enforcement using the phone number that Elliott had given to him. During that call, which was recorded, the CW gave Relative 2 the undercover agent's telephone number saying that it was for Elliott.

On or about June 6, 2019, Relative 2 sent Elliott a text message, using his inmate communication account, to provide the undercover agent's telephone number. Elliott immediately attempted to contact the undercover agent using his own PIN number, but was unsuccessful. Elliott then contacted Relative 2 and asked if the friend had mentioned "Iguana," to which Relative 2 said no. Elliott told Relative 2 that the "friend" had passed along a phone number and provided the number (which was the undercover's phone number). Elliott told Relative 2 that he needed to send a text to the number and tell the person that "Iguana was going to be calling for Atudo." Elliott told Relative 2 that his friend's wife would probably answer the phone, and to warn her that the phone call would be coming from Henderson County Detention Center. Elliott then told Relative 2 that it was very good that he had the phone number.

On or about June 6, 2019, the undercover agent received the text message described by Elliott from the telephone number (850) 405-XX19 (known, but redacted). The telephone number (850) 405-XX19 (known, but redacted) belonged to Relative 1.

On or about June 6, 2019, and during a recorded call, Elliott used his PIN from Henderson County Detention Center to contact "Arturo/Atudo" whom Elliott believed

was the hitman, but who was actually the undercover agent for FBI. During the phone call, which was recorded, Elliott said he wanted to sell his motorcycle, which Elliott admits was coded language for murdering Minor Victim 1 and Witness Victim 1 in exchange for something of pecuniary value. Elliott then asked the undercover agent (whom he believed to be the hitman) if he had received anything from his friend (meaning, the CW). The undercover agent told Elliott that he had received a document. Elliott then told the undercover agent that he did not want to speak openly about the situation because his calls were being recorded, and that everything he needed to know was in the document (the letter referenced above). Elliott admits that he then described the motorcycle he wanted to sell as a 2008 Hayabusa with orange and silver paint, with approximately 12,000 miles on it. Elliott also told the undercover agent that once he gets out, he had many other things such as equipment and motorcycles to sell. Elliott admits that he intended to hire the person he believed was a hitman to kill Minor Victim 1 and Witness Victim 1 in exchange for anything of pecuniary value, to wit, a heavy duty equipment, a 2008 Hayabusa motorcycle, and military-grade weapons, including shoulder-launched multipurpose assault weapons ("shoulder L's") and M203 Grenade Launchers ("203's").

## The FBI Executes a Search Warrant at Relative 2's Residence

Elliott acknowledges that federal agents then executed a federal search warrant at Relative 2's house. Elliott agrees that during this time period, Relative 1 had been residing with Relative 2 at the Shelbyville residence. Prior to the execution of the search warrant, deputies of the Shelby County, Indiana Sheriff's Office obtained an

arrest warrant for Relative 1 for violating the conditions of her state probation. Elliott acknowledges that she was not present during the search.

On or about June 11, 2019, Elliott contacted Relative 2 from the Henderson County Detention Center. During the call, Relative 2 informed Elliott that an arrest warrant was issued for Relative 1. Elliott told Relative 2 during the call to take Relative 1's cellular telephone from her. Elliott stated that law enforcement would try to confiscate her cellular telephone when she was taken into custody. Relative 2 responded "Mason, I know that. She don't (sic) have a cell phone anymore. I do."

On or about June 11, 2019 and after Relative 1 was in the custody of the Shelby County Sheriff's Office, Elliott received approximately two text messages from an account using Relative 1's cellular telephone on his inmate communication account.

Elliott further acknowledges that agents recovered the firearms listed below and in the Second Superseding Indictment filed at Docket 189, documents containing the CW's name and number, the purported "hitman's" name and number, notes regarding conversations between Relative 2 and Elliott about calling the "hitman," and the 2008 Hayabusa motorcycle VIN# JS1GX72A182104001. Elliott admits that the FBI seized the Springfield Model, XDs-9, 9 millimeter pistol with a 4-inch barrel and a Glock 23 .40 caliber pistol, which was listed in the Second Superseding Indictment in Count 15.

Accordingly, and as set forth in Count 1, Elliott admits that between on or before May 20, 2019, and on or about June 13, 2019, in the Southern District of Indiana and elsewhere, the Defendant, Elliott, did use and cause to be used facilities of interstate

commerce, namely cellular devices and the United States Mail, with the intent that the murder of Minor Victim 1 be committed in violation of the laws of any State or the United States, said murder to be committed for the receipt of, or as consideration for the promise or agreement to pay, anything of pecuniary value, to wit, heavy duty equipment, a 2008 Hayabusa motorcycle, and military-grade weapons, including shoulder-launched multipurpose assault weapons ("shoulder L's") and M203 Grenade Launchers ("203's").

As set forth in Count 2, Elliott also admits that between on or before May 20, 2019, and on or about June 13, 2019, in the Southern District of Indiana and elsewhere, the Defendant, Elliott did use and cause to be used facilities of interstate commerce, namely cellular devices and the United States Mail, with the intent that the murder of Witness Victim 1 be committed in violation of the laws of any State or the United States, said murder to be committed for the receipt of, or as consideration for the promise or agreement to pay, anything of pecuniary value, to wit, heavy duty equipment, a 2008 Hayabusa motorcycle, and military-grade weapons, including shoulder-launched multipurpose assault weapons ("shoulder L's") and M203 Grenade Launchers ("203's").

As set forth in Count 3, Elliott further admits that between on or about May 20, 2019, and in or about September 2019, in the Southern District of Indiana and elsewhere, the Defendant, Elliott, did attempt to kill another person, namely Minor Victim 1, with the intent to prevent Minor Victim 1's attendance or testimony in an official proceeding.

As set forth in Count 4, Elliott further admits that between on or about May 20, 2019, and in or about September, 2019, in the Southern District of Indiana and elsewhere, the Defendant, Elliott, did attempt to kill another person, namely Witness Victim 1, with the intent to prevent Witness Victim 1's attendance or testimony in an official proceeding.

Finally, and as set forth in count 15, Elliott admits that between or about August 21, 2017, and on or about October 6, 2017, within the Southern District of Indiana, Indianapolis Division, the defendant, Elliott knowingly having been convicted of one or more felony crimes punishable by imprisonment for a term exceeding one (1) year, to wit:

> Theft, a Class D Felony, and Obstruction of Justice, a Class D Felony, under cause numbers 73C01-1203-FB-009 and 73C01-1209-FD-333, in the Shelby Circuit Court, in Shelby County, Indiana, on or about December 18, 2012,

> Intimidation, Threat to Commit a Forcible Felony, a Level 6 Felony, under cause number 73C01-1407-F6-000019, in the Shelby Circuit Court, in Shelby County, Indiana, on or about July 21, 2016;

did knowingly possess in and affecting commerce a firearm and ammunition, to wit:

> a Springfield Model, XDs-9, 9 millimeter pistol with a 4-inch barrel; and
> a Glock 23 .40 caliber pistol.

Elliott admits that he acquired the Glock 23, .40 caliber pistol from a straw purchaser. Elliott is depicted in images and videos possessing several firearms, including one or more firearms that had a high capacity magazine.

<u>Stipulated Facts  Under 1B1.2 (a) and (c)</u>

Elliott stipulates to the following facts which he agrees are the commission of additional offenses for the purposes set forth under the United States Sentencing Guidelines Sections 1B1.2(a) and (c).

Elliott acknowledges that on or about October 19, 2017, the Shelby County, Indiana Sheriff's Office received a complaint from Witness Victim 1 (Relative 1 of Minor Victim 1), concerning Elliott's violation of the No Contact Order.  Elliott acknowledges that Witness Victim 1 had discovered that Elliott had used Facebook Messenger to communicate with Minor Victim 1 in violation of the No Contact order.

Elliott admits that he used Facebook Messenger to send Minor Victim 1 a video describing the location of a compact disc case containing an amount of heroin.  Elliott left the compact disc case for Minor Victim 1 and produced a video showing Minor Victim 1 where she could retrieve the case. The Shelby County Sheriff's Office seized the compact disc case containing the narcotic substance, and Elliott admits that it contained approximately .03 grams of heroin.  Elliott further admits that he was on GPS monitoring with the Marion County Community Corrections Office at the time of the events, and that a  review of the GPS data confirmed that Elliott was in the area described in the video.

Elliott acknowledges that the Shelby County Sheriff's office obtained a lawful search warrant for the Facebook account he used to communicate with Minor Victim 1 (ID: mason.elliott.XXXX, known but redacted). Facebook provided records in

response to the search warrant on or about November 6, 2017. The account was registered with the email address masonelliott1227@yahoo.com on March 20, 2017.

Elliott admits that he used a device manufactured outside the State of Indiana to produce sexually explicit images and videos of Minor Victim 1. Elliott further admits that he used Facebook messenger to distribute images and videos depicting Minor Victim 1 engaging in sexually explicit conduct to Minor Victim 1 and one other person. The videos that Elliott produced depicting Minor Victim 1 engaging in sexually explicit conduct included the following:

On or about September 27, 2017, Elliott sent Minor victim 1 a video file titled video-1506535237.mp4. The video is approximately 9 seconds in length. The video begins with the camera focused directly on Minor Victim 1's vagina. Minor victim 1 is lying on her back, with a pillow under her head, and wearing only a multicolored blouse. A male voice is heard saying "this must be a snack." An adult male hand is then shown spreading apart minor victim 1's labia. Minor Victim 1's face is clearly visible in the video. The focus of the video is Minor Victim 1's vagina.

On or about September 27, 2017, directly after the previous video, Elliott sent Minor Victim 1 a video file titled video-1506535253.mp4. The video is approximately 9 seconds in length. The video shows ELLIOTT performing oral sex on Minor Victim 1. ELLIOTT can be heard saying, "do you like that?" The video is filmed looking downward from Minor Victim 1's perspective. The focus of the video is ELLIOTT's face while he is performing oral sex on Minor Victim 1.

On or about September 27, 2017, Elliott sent Minor Victim 1 a video file titled video-1506532434.mp4. The video is approximately 10 seconds in length. The video begins by showing Minor Victim 1's vagina. Minor Victim 1 is then shown lying on a bed while wearing no clothing, before the focus shifting back to her vagina. Minor Victim 1's face is visible in the video. The focus of the video is Minor Victim 1's vagina.

On or about September 27, 2017, Elliott sent Minor Victim 1 a video file titled video-1506531042.mp4 The video is approximately 10 seconds in length. The video starts showing Elliott's face, while he says, "hey, you ain't on shit if you ain't ever cracked some ass, while you on the motha-

fuckin canal." Elliott then moves the camera to show himself performing vaginal or anal intercourse on Minor Victim 1 while he stands behind her. Minor victim 1 is shown wearing no pants and bent over in front of Elliott. Elliott's penis is visible in the video. Based on pictures and other content in the video the location appears to be the canal located in downtown Indianapolis. Minor Victim 1's face is not visible in the video, but she was wearing a purple sweatshirt that is identifiable from an image sent directly proceeding the video.

On or about September 27, 2017, Elliott sent Minor Victim 1 a video file titled video-1506531056.mp4. The video is approximately 10 seconds in length. The video begins by showing Elliott's face while he holds the camera. The video then shows Minor Victim 1 performing oral sex on Elliott. The location and clothing appear to be the same as the previously described video. The focus of the video is Minor Victim 1 while she performs oral sex on Elliott.

Elliot admits that each separate video constitutes child pornography, and that he sent videos depicting Minor Victim 1 engaged in sexually explicit conduct from Elliott's Facebook account to Minor Victim 1's Facebook account. Elliott admits that each video constitutes child pornography of Minor Victim 1, and that he used Minor Victim 1 to create the videos on a device manufactured outside the State of Indiana.

### Part 6: Other Conditions

**18.    Background Information:**    The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.  The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

**19.     Good Behavior Requirement:** The defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case. If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

**20.     Compliance with Federal and State Laws:** The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

## Part 7: Sentencing Guideline Stipulations

**21.     Guideline Computations:** The parties reserve the right to present evidence and argument concerning the appropriate advisory Sentencing Guideline range for these offenses. After the United States Probation Office has prepared the defendant's presentence investigation report (PSR), counsel for the parties have agreed to meet and confer regarding the PSR's proposed advisory Sentencing Guideline range. Prior to sentencing, the parties will notify the Court regarding the agreed and contested offense conduct, adjustments, and criminal history calculations.

## Part 8: Waiver of Right to Appeal

**22.     Direct Appeal:** The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. The

defendant further expressly waives any and all challenges to the statute(s) to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute(s). The defendant further agrees that in the event the Court sentences the defendant to a sentence of 55 years' imprisonment or below, regardless of the defendant's criminal history category or how the sentence is calculated by the Court, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This blanket waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

23. **Later Legal Challenges:** Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment. However, if the defendant files such a motion, the Government may oppose the motion on any other

grounds. Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal. As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

24. **Motions for Compassionate Release:** As concerns this Section 3582 waiver, the defendant reserves the right to seek a "compassionate release" sentence reduction pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" established by the defendant.

25. **No Appeal of Supervised Release Term and Conditions:** The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

## Part 9: Presentence Investigation Report

26. The defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

27. The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the

defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

## Part 10: Immigration Consequences

**28.** The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. The defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the conviction in this case on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is the defendant's removal from the United States.

## Part 11: Statement of the Defendant

**29.** By signing this document, the defendant acknowledges the following:

a.      I have received a copy of the Second Superseding Indictment at Docket 189 and have read and discussed it with my attorney. I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Second Superseding Indictment filed at Docket 189 in open Court, and all further proceedings including my arraignment.

b.     I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Second Superseding Indictment filed at Docket 189 and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

c.     I have read the entire Plea Agreement and discussed it with my attorney.

d.     I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

e.     Except for the provisions of the Plea Agreement, no officer or agent of any branch of Government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty." I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

f.     I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and that I fully understand the proceedings in this case against me.

g.     I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

h.     I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

i.     I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

j.     My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

k.     My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

l.    If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement.    I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

## Part 12:  Certificate of Counsel

**30.**    By signing this document, the defendant's attorneys and counselors certifies as follows:

a.    We have read and fully explained to the defendant all the accusations against the defendant which are set forth in the Second Superseding Indictment file at Docket 189 in this case;

b.    To the best of our knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

c.    The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with our understanding of the facts as related to us by the defendant and is consistent with our advice to the defendant;

d.    In our opinion, the defendant's waiver of all reading of the Second Superseding Indictment filed at Docket 189 in open Court, and in all further

proceedings, including arraignment as provided in Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and we recommend to the Court that the waiver be accepted by the Court;

e.  In our opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and we recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

## **Part 13: Final Provision**

**31.** **Complete Agreement:** The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty. This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

DATE

Tiffany J. Preston
Assistant United States Attorney

DATE

Kyle M. Sawa
Chief, General Crimes Unit

DATE 6-7-22

Robert Mason Elliott
Defendant

DATE 6-7-22

Brandon Sample
Counsel for Defendant