# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | 1:19-cr-00152-TWP-MJD-1 |
| ROBERT MASON ELLIOTT. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

### I. Introduction

"Why don't dr's help me? Why don't they understand I am messed up? Those were Robert Mason Elliott's words to a psychologist at the tender age of *seven*. *See*, Exhibit 1, pg. 390.[1] Sexually abused and mentally broken, Elliott was crying out for help. But those cries, for a number of reasons, were never answered. Not unexpectedly, Elliott's untreated and misdiagnosed mental illness led Elliott on a path of literal self-torture and ultimately the criminal justice system. Elliott is now at a crossroads in his life.



Figure 1- Elliott Age 7

---

[1] An unopposed motion for leave to file these records under seal will be filed.

However, this time—things are different.

For the first time in Elliott's life, Elliott has a reliable mental health diagnosis—borderline personality disorder. He also has a treatment recommendation—dialectal behavior therapy ("DBT"). Elliott, as the Court will hear during Elliott's allocution, is *excited* to participate in DBT therapy and other Bureau of Prisons programs. Even without any current access to DBT therapy and other mental health treatment programs, Elliott has been behaving and conducting himself appropriately. Elliott has been doing this because he understands that is what is expected of him—but also because Elliott wants the Court to know that he *can* make positive changes. Elliott may be broken, but he is not unfixable.

The Government paints a dark picture of Elliott that fails to take into account the significant, recent strides Elliott has made to do better. Furthermore, the Government's singular focus on incapacitation is inconsistent with the principle of parsimony, particularly given that Elliott *has never in his life* had a reliable mental health diagnosis or treatment recommendation until now. The Government's proposed sentence of 55 years would throw Elliott away without first giving him

**Sentencing Memorandum and Motion for Downward Variance        Page 2**

the chance to receive actual mental health treatment for his previously misdiagnosed mental health disorders. The Court should decline the Government's invitation. A sentence of ten years is sufficient, but not greater than necessary, to achieve the purposes of sentencing.

## II. The Sentencing Guidelines

The Government is no longer advocating for the "vulnerable victim" enhancement. But the elimination of this enhancement does not change the overall advisory Guidelines, as noted below.

The parties have further conferred about Objection No. 2 and the parties now agree that only a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(C) applies to the distribution counts.

Elliott withdraws Objection No. 3 to the number of images. Nevertheless, Elliott does believe the Court can properly consider, as part of the § 3553 factors, whether the 4-level enhancement for five extremely short videos overstates the seriousness of the offense.

Finally, Elliott respectfully submits that the addendum's resolution of Objection No. 4 is correct and withdraws any further objection to the grouping of the counts.

Considering the above, Elliott's new total offense is 41, Criminal History Category VI. This produces an advisory Guideline range of 360-1,080 months.

### III. The 18 U.S.C. § 3553 Factors

**(1) <u>The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant</u>**

Elliott's offense behavior is extremely serious—without a doubt. Elliott wants to make clear to the Court that he accepts full and complete responsibility for his conduct. That said, the broken and tortured life Elliott grew up in remains pertinent.

Elliott, while only fix years old, was sexually abused by a neighbor. (PSR ¶ 192). He was raised by his mother Deborah Sue Elliott and his grandparents—his father missing from his life. (PSR ¶ 192). As a young child, Elliott experienced anger issues and other feelings of mental unwellness. *See,* Exhibit 1 pg. 390. Elliott's mother took Elliott for treatment, but over the years Elliott never received a consistent mental health diagnosis. (PSR ¶ 199).

Misdiagnosed and incorrectly medicated, Elliott slowly began to get in trouble with the law. (PSR ¶¶ 164-166). As Elliott's criminal behavior continued, Elliott suffered from concussions (PSR ¶¶ 195-196),

which led to Elliott being prescribed prescription pain pills that Elliott became addicted to.

Now, Elliott's mistreated mental health disorders were combined with substance abuse. Quickly, Elliott's life continued to spiral.

**(2) The Need For The Sentence Imposed**

    **(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

A sentence of ten years imprisonment would appropriately reflect the seriousness of Elliott's offenses, promote respect for the law, and provide just punishment.

    **(B)   to afford adequate deterrence to criminal conduct**

Specific and general deterrence are important in this case. Given same, a sentence of ten years adequately addresses the need for specific and general deterrence.

    **(C)   to protect the public from further crimes of the defendant**

Given Elliott's criminal history and other behavior, the need to protect the public is an appropriate factor. However, Elliott respectfully submits that appropriate consideration of this factor should take into account that prior to now, Elliott never had an accurate mental health

diagnosis. Elliott's ability and commitment to address his mental health needs through DBT therapy and other pro-social programs mitigates protection of the public concerns.

**(D)** **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Elliott would significantly benefit from DBT therapy and other BOP mental health programs. The BOP at FCI Terre Haute offers the "STAGES" program which is suited for the kind of treatment Elliott requires. Indeed, Dr. Ray Kim, a private psychologist who first met with Elliott during his competency proceedings, recently opined on how Elliott would benefit from participating in DBT therapy. *See*, Exhibit 2.[2] Dr. Kim further notes in his report marked differences in Elliott's behavior, self-control, and emotional regulation since Dr. Kim originally examined him. *Id.*

---

[2] An unopposed motion for leave to seal Exhibit 2 will also be submitted.

# Steps Toward Awareness, Growth, and Emotional Strength Program

| | |
|---|---|
| Program Description | The Steps Toward Awareness, Growth, and Emotional Strength (STAGES) Program is a residential treatment program for inmates with serious mental illnesses and a primary diagnosis of Borderline Personality Disorder. The program uses an integrative model which includes a modified therapeutic community, cognitive behavioral therapies, and skills training. The program is designed to increase the time between disruptive behaviors, foster living within the general population or community setting, and increase pro-social skills. |
| Time Frame | The STAGES Program is typically conducted over 12-18 months. Inmates may participate in the program at any time during their sentence. Formal programming is facilitated half-days, five days a week with the remaining half-day dedicated to an institution work assignment or other programming. |
| Admission Criteria | Inmates referred to the STAGES Program have a primary diagnosis of Borderline Personality Disorder and a history of unfavorable institutional adjustment linked to this disorder. Examples of unfavorable institutional adjustment include multiple incident reports, suicide watches, and/or extended placement in restrictive housing. Inmates designated to the STAGES Program must volunteer for treatment and be willing to actively engage in the treatment process. Willingness to engage in the treatment is assessed through a brief course of pre-treatment in which the inmate learns basic skills at the referring institution. |
| Program Content | The program curriculum is derived from Dialectical Behavior Therapy (DBT) and takes place in a modified therapeutic community. There is also an emphasis on basic cognitive-behavioral skills consistent with other Bureau treatment programs. For example, criminal thinking is addressed through the identification of criminal thinking errors and engagement in pro-social interactions with staff and peers. Program content is designed to prepare inmates for transition to less restrictive prison settings and promote successful reentry into society at the conclusion of their term of incarceration. Program staff collaborate with community partners to facilitate reentry. |
| Empirical Support | DBT is an evidence-based practice for the treatment of Borderline Personality Disorder, with strong empirical support. In addition, the cognitive-behavioral interventions and modified therapeutic community model employed in the program are well supported in the professional literature. These interventions appear in a number of evidence-based programs (EBPs) registries. |
| Applicable Policies | 5330.11 CN-1 Psychology Treatment Programs |
| Institution Locations | The STAGES Program is available at the following facilities:<br>USP Florence, CO-High (Secure)<br>FCI Terre Haute, IN-Medium |

**(3) The Kinds Of Sentences Available**

The Court, per the plea agreement, can impose a sentence between 10 and 55 years.

**(4) The Kinds Of Sentence And The Sentencing Range Established For—**

**(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—**

As previously noted, the revised Guidelines call for a sentence of 360 months to life.

**(6) The Need To Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct**

The need to avoid unwarranted sentence disparities is important and should be strongly considered by the Court. According to data from the U.S. Sentencing Commission for the past five years, defendants convicted and sentenced for murder for hire receive a median sentence of 120 months.[3]

---

[3]  https://ida.ussc.gov/analytics/saw.dll?Dashboard



Defendants in criminal history category VI convicted and sentenced for witness tampering, receive a median sentence of 180 months.



Elliott's requested sentence of 120 months is not a far departure from the median sentence for the most serious conduct (in terms of potential for physical harm) in this case.

**(7)    The Need To Provide Restitution To Any Victims Of The Offense**

Elliott has agreed to make restitution as part of his plea agreement.

### III. CONCLUSION

The Court should downwardly vary from the advisory Guideline range and sentence Elliott to a term of 120 months imprisonment on all counts for which he was convicted, with the sentence on each count ordered to run concurrently.

Respectfully submitted,

/s/Brandon Sample
Brandon Sample
1701 Pennsylvania Ave. N.W. # 200
Washington, DC 20006
Tel: 202-990-2500
Fax: 202-990-2600
Vermont Bar # 5573
https://brandonsample.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served this 5th day of January 2023, via CM/ECF on all counsel of record.

/s/Brandon Sample
Brandon Sample